A92A1137. RAMSDELL et al. v. STATE AUTO MUTUAL
INSURANCE COMPANY.
A92A1138. WALSH et al. v. STATE AUTO MUTUAL
INSURANCE COMPANY.

(425 SE2d 661)

POPE, Judge.

Effective May 24, 1989, State Auto Mutual Insurance Company ("State Auto") issued a policy of automobile liability insurance coverage to Richard Ramsdell as the named insured for the policy period ending November 24, 1989. That policy was a continuation of a policy which began on May 24, 1985. The policy listed Richard Ramsdell and his wife Mary R. Ramsdell as drivers under the policy and insured three automobiles, a 1984 Honda Accord, a 1986 Chrysler Fifth Avenue, and a 1985 Dodge 600.

On June 13, 1989, the Ramsdells' son, Robert, was involved in a collision while driving the Honda, a covered vehicle under the Ramsdells' policy. Because Robert was not listed as a driver under the policy and was at that time residing at his parents' home, State Auto insisted that Robert be added to the policy. On September 6, 1989, Richard Ramsdell requested that his son Robert and a 1987 Pontiac Grand Am be added to his policy. After Robert was added as a driver under the policy, State Auto learned that he had received a ticket for driving under the influence of alcohol ("DUI") and that he had pled nolo contendere to that charge. By letter dated September 29, 1989, State Auto issued a notice that the Ramsdells' policy would be cancelled within 30 days due to Robert's driving record. The evidence showed that this notice was sent to Hansford-Cloy Insurance Agency, the insurance agency that placed the Ramsdells' coverage with State Auto. An insurance agent with Hansford-Cloy, Ms. Purvis, then contacted Richard Ramsdell and informed him that his family's coverage would be cancelled.

Richard Ramsdell inquired about what he could do to retain coverage with State Auto. After the agent spoke with persons employed by State Auto in its underwriting department, she told Richard that he should write a letter stating that Robert was not a resident in his home and that title to the car driven by Robert would be transferred to him. On or before November 15, 1989, Richard Ramsdell telefaxed a letter to Ms. Purvis. The text of that letter follows:

"Effective 11/20/89, Robert Ramsdell will not be included on my auto insurance plan carried by your company. Robert will have clear title to the 1987 Grand Am #1G2NE510U7H782933 and since mid September is a student of North Georgia College and resides there full time. Please continue coverage on my 1986 Fifth Avenue (Chrysler) and my wife's 1985 Dodge 600 convertible. Also, please change my address to 924 Model Court; Stone Mountain, Georgia

30088."

After receiving this letter, Ms. Purvis sent a change request to State Auto which stated that effective November 20, 1989, both Robert Ramsdell and the 1987 Pontiac Grand Am should be removed from the Ramsdells' policy.

These cases arise from a motor vehicle accident which occurred on November 21, 1989, one day after the policy changes became effective. On that day Robert Ramsdell, while driving the Grand Am, lost control of the vehicle and ran off the road. Robert's only passenger, Bradley Walsh, was ejected from the automobile and killed. The vehicle was titled to Richard Ramsdell on the date of the accident.

State Auto filed a complaint for declaratory judgment seeking a determination as to whether it is obligated under the Ramsdells' policy to provide coverage for that accident. The complaint originally named Richard and Robert Ramsdell as defendants. By consent order Hubert and Barbara Walsh, the parents of Bradley Walsh, were added as defendants. The Walshes and State Auto each filed motions for summary judgment. The trial court granted State Auto's motion for summary judgment. In Case No. A92A1137, the Ramsdells appeal the trial court's grant of summary judgment in State Auto's favor. In Case No. A92A1138, the Walshes appeal the trial court's grant of summary judgment to State Auto and the denial of their motion for summary judgment.

## Case No. A92A1137

1. The Ramsdells argue that there remains a genuine issue of material fact concerning whether Richard Ramsdell intended to delete coverage for the 1987 Pontiac Grand Am effective November 20, 1989. Richard Ramsdell testified that his intent when he wrote the letter was to delete only coverage for his son and to retain coverage for the Grand Am until he transferred title to that vehicle to his son.

On motion for summary judgment the burden is on the movant to prove that there remains no genuine issue of material fact. The opposing party must be given the benefit of all reasonable doubts that can be drawn from the evidence. *Turner v. Regal Ins. Co.*, 201 Ga. App. 720, 721 (411 SE2d 802) (1991). We hold that the only reasonable interpretation of the letter quoted above is that Richard Ramsdell requested that both Robert Ramsdell and the 1987 Pontiac Grand Am be removed from his policy effective November 20, 1989. The trial court correctly found there remained no genuine issue of material fact concerning what policy changes Richard Ramsdell requested in the letter quoted above.

2. The Ramsdells also contend that there remains an issue of material fact concerning whether the cancellation of coverage for Robert

Ramsdell was the act of Richard Ramsdell or State Auto. While Richard Ramsdell did not seek to modify his policy until he was threatened with cancellation by State Auto, that fact does not make his act of removing his son from the policy the act of State Auto. Richard Ramsdell had the option of obtaining automobile insurance through another company. He chose not to exercise that option and instead to eliminate the reason that State Auto refused to insure the risk of covering his family and automobiles. Consequently, summary judgment was properly granted to State Auto as to this issue.

3. Contrary to the Ramsdells' contention otherwise, the policy was not cancelled, it was only modified. See *Progressive Preferred Ins. Co. v. Davis*, 199 Ga. App. 598 (405 SE2d 529) (1991); *Buffington v. State Auto Mut. Ins. Co.*, 192 Ga. App. 389 (384 SE2d 873) (1989). The modifications made were at the request of Richard Ramsdell. Therefore, whether State Auto complied with the policy provisions regarding cancellation or termination is irrelevant to this appeal.

4. The Ramsdells argue State Auto's notice of cancellation to Richard Ramsdell violated OCGA § 33-24-45 because none of the reasons listed in subsection (c) of that statute existed at the time State Auto issued its notice of cancellation. OCGA § 33-24-45 (c) (5) states that cancellation is appropriate when "[t]he named insured failed to disclose in his written application or in response to inquiry by his broker or by the insurer or its agent information necessary for the acceptance or proper rating of the risk." Thus, whenever the insurer learns that "information necessary for the acceptance or proper rating of the risk" was not made available to it before the policy is issued or modified, it has the statutory right to issue a notice of cancellation for the policy. Clearly, information that the driver's license of a driver recently added to the policy had recently been suspended because of a DUI violation is, "information necessary for the acceptance or proper rating of the risk." After learning about the suspension of Robert Ramsdell's license, State Auto acted within its statutory authority by issuing a notice of cancellation of the Ramsdells' policy.

5. Our holding in Division 1 makes it unnecessary to address the Ramsdells' remaining enumerations of error.

### Case No. A92A1138

6. The Walshes posit that even if both Robert Ramsdell and the Grand Am were removed from coverage effective November 20, 1989, because the Grand Am was still titled to Richard Ramsdell it would be a "covered auto" as that term is defined in the policy. Essentially, the Walshes suggest that the Grand Am was still covered on November 21, 1989, as an owned auto provided to a family member with the owner's permission for a family purpose. Subsection J of the defini-

tions section of the policy defines the term "covered auto" as meaning:

"1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van.

This provision (J.2) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle."

Richard Ramsdell did not purchase the Grand Am within 30 days from the date of the accident. As we discussed in Division 1, Richard Ramsdell requested that the Grand Am be removed from coverage under the policy effective November 20, 1989. It is axiomatic that one may not obtain coverage from an insurer for every automobile titled to him by procuring insurance on fewer than all vehicles. It also follows that one may not cancel insurance coverage on a particular vehicle and maintain that the insurer should still be liable if the vehicle is later used for a family purpose.

Furthermore, the definition of "covered auto" must be read in conjunction with Subsection B of the policy exclusions, which provides as follows:

"We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than 'your covered auto,' which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than 'your covered auto,' which is:

a. owned by any 'family member;' or

b. furnished or available for the regular use of any 'family member.'

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

a. owned by a 'family member;' or

b. furnished or available for the regular use of a 'family member.'"

That provision clearly excludes from coverage vehicles owned by the insured that are not "covered autos" within the meaning of the policy. After November 20, 1989, the Grand Am was not a "covered auto" as that term is defined in the policy and it was specifically excluded from coverage by Subsection B of the Exclusions section.

7. The Walshes argue that even if the Grand Am is not a "covered auto" as that term is defined in the policy, State Auto must provide liability coverage for this accident because the Grand Am was being used for a family purpose at the time of the accident. The Walshes do not cite and we are aware of no authority that supports this strained interpretation of the policy.

8. The Walshes suggest that summary judgment in State Auto's favor is violative of public policy because it allows the named insured to circumvent Georgia's compulsory automobile insurance coverage requirements. The Walshes confuse the obligations of the insurer with those of owners of automobiles. The Ramsdells ran afoul of Georgia's compulsory insurance laws by failing to provide liability coverage for the 1987 Grand Am owned by Richard Ramsdell and operated by Robert Ramsdell on the date of the accident. State Auto decided that Robert Ramsdell presented a risk that it was unwilling to insure, which is not violative of public policy under the facts of this case. See *Buffington,* supra.

The trial court correctly granted State Auto's motion for summary judgment.

*Judgments affirmed. Carley, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 8, 1992 — RECONSIDERATIONS DENIED OCTOBER 13, 1992 AND NOVEMBER 19, 1992 

*L. David Wolfe & Associates, L. David Wolfe,* for appellants (case no. A92A1137).

*Finch, McCranie, Brown & Thrash, Richard W. Hendrix,* for appellants (case no. A92A1138).

*Freeman & Hawkins, Michael J. Goldman, Kevin W. Pendley,* for appellee.