A06A1423. DANFORTH v. GOVERNMENT EMPLOYEES
INSURANCE COMPANY et al.
A06A1424. BULMAN v. GOVERNMENT EMPLOYEES
INSURANCE COMPANY et al.
(638 SE2d 852)

RUFFIN, Chief Judge.

Sarah Danforth was injured on May 12, 2003, when her automobile collided with an automobile driven by Aaron Bulman ("Aaron"), the adult son of Elizabeth Bulman ("Bulman"). Government Employees Insurance Company and GEICO Casualty Insurance Company (collectively "GEICO") filed a complaint for declaratory judgment against Danforth, Bulman, and Aaron, to determine the parties' rights and obligations regarding the insurance policy it issued to Bulman.[1] The trial court granted GEICO's motion for summary judgment, effectively concluding that Bulman's policy provided no coverage for Danforth's claims. In Case No. A06A1423, Danforth appeals; in Case No. A06A1424, Bulman appeals. As both involve the same operative facts, we have consolidated the appeals. For reasons that follow, we affirm.

A trial court properly grants summary judgment when the movant demonstrates entitlement to judgment as a matter of law and there is no genuine issue of material fact.[2] We review, de novo, a grant of summary judgment, and we view the evidence and all reasonable conclusions and inferences drawn therefrom in a light most favorable to the nonmovant.[3]

So viewed, the record establishes that Bulman purchased a Ford Taurus for her 19-year-old son, Aaron. The car was initially covered under Bulman's GEICO policy. On April 3, 2003, Bulman telephoned GEICO, requesting that the Taurus be deleted from her policy and added to a new policy in Aaron's name. Kimberly Jones, a GEICO claims coverage underwriter, states that GEICO deleted the Taurus from Bulman's policy and issued a new policy to Aaron, as requested by Bulman. According to Jones, GEICO issued a refund to Bulman —

---

[1] GEICO does not contest coverage for the collision under its policy issued to Aaron.

[2] See *AKA Mgmt. v. Branch Banking & Trust Co.*, 275 Ga. App. 615, 616 (621 SE2d 576) (2005).

[3] See id.

for the credit accrued as a result of deleting the Taurus from her policy — by sending her a check dated April 7, 2003, in the amount of $61.59. Jones indicates that the check was cashed on July 14, 2003. Bulman, however, denies that she ever received such a refund.

Aaron was driving the Taurus on May 12, 2003, when it collided with a vehicle driven by Danforth. On June 26, 2003, a lawyer representing Danforth sent a letter to GEICO, advising that Danforth had sustained injuries in the collision and seeking a written statement of the details of any relevant insurance policies. On June 30, 2003, Lori Stevenson, a claims examiner for GEICO, sent a response letter, enclosing affidavits of coverage for two separate policies — one for Aaron and one for Bulman — and stating that Bulman's policy "would serve as excess." On July 11, 2003, GEICO paid the property damage claims for the Danforth vehicle. Stevenson sent another letter to Danforth's lawyer on July 31, 2003, again enclosing affidavits of coverage for both policies and stating that "[s]ince Aaron was a resident of his mother's household at the time of the accident, her policy . . . will be secondary coverage." GEICO paid a personal injury claim to the passenger in Danforth's vehicle on September 13, 2003.

On September 15, 2003, GEICO sent a letter to Bulman denying coverage under her policy. Specifically, the letter advised that

> [w]ith respect to the automobile [sic] occurring on May 18, 2003 [sic], [GEICO] hereby disclaims and denies any and all liability and obligation to you and to others under the policy . . . issued to Elizabeth Bulman. This disclaimer is made because the vehicle involved in this accident, a 1999 Ford Taurus, is not a listed vehicle on your policy nor does not [sic] meet the definition of an *owned* or *non-owned auto* as defined under the policy. [GEICO] will take no further action with respect to any claim which you might have against us or with respect to any claim or suit against you which has arisen, or may arise, out of the said accident and hereby withdraws from the matter entirely.

(Emphasis in original.) In May 2004, Danforth filed suit against Aaron and Bulman.[4] On June 4, 2004, GEICO sent a reservation of rights agreement to Bulman, indicating its intention to "maintain its right to contest coverage, while at the same time affording the protection of a defense to . . . Bulman." On June 10, 2004, Bulman's

---

[4] Danforth asserted claims against Bulman based upon the family purpose doctrine and negligent entrustment.

attorney filed an answer on her behalf in the underlying tort action. GEICO also sent a reservation of rights letter to Aaron on July 9, 2004, asserting its right to contest coverage for Aaron under his mother's policy. GEICO filed the instant action on August 10, 2004, seeking a declaratory judgment specifying the rights and liabilities of the parties, and declaring that GEICO "is free from any liability" under Bulman's policy.

Bulman's counsel — provided by GEICO — filed a motion for summary judgment in the underlying tort case, which the trial court granted on February 24, 2005. Danforth appealed, and on November 23, 2005, this Court affirmed the trial court's grant of summary judgment on the negligent entrustment claim, but reversed as to the claim based upon the family purpose doctrine.[5]

Danforth filed a motion to dismiss in the instant case in February 2005, contending that a declaratory judgment was not available to GEICO because there was no uncertainty as to its future course of action, and the trial court denied the motion. Thereafter, the parties filed cross-motions for summary judgment and the trial court ruled in favor of GEICO, concluding that Bulman's policy provided no coverage for the collision between Aaron and Danforth.

1. As an initial matter, we note that the briefs submitted by the parties have hindered our review of these cases. Although the parties' briefs contain statements of fact properly supported by record citations,[6] the parties have largely failed to include record citations for their arguments. Court of Appeals Rule 25 (c) (3) (i) requires that "[e]ach enumerated error shall be supported in the brief by specific reference to the record or transcript." The size of the record — over 1,600 pages — and the length of the briefs have made our analysis of the parties' unsupported enumerations difficult. Under our rules, we need not consider any enumerations unsupported by record citations.[7] Nevertheless, we have discretion to consider the merits of an appeal despite a party's failure to comply with our rules.[8] Given the parties' inclusion of record citations in their factual statements, we will exercise our discretion to consider the merits of these appeals.[9]

---

[5] See *Danforth v. Bulman*, 276 Ga. App. 531 (623 SE2d 732) (2005).

[6] See Court of Appeals Rule 25 (a) (1).

[7] "In the absence of such reference, the Court will not search for or consider such enumeration." Court of Appeals Rule 25 (c) (3) (i).

[8] See *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006).

[9] See id.

## Case No. A06A1423

2. In her first enumeration of error, Danforth asserts that GEICO's complaint for declaratory judgment should have been dismissed because GEICO expressly denied coverage before Danforth filed the underlying tort claim. We disagree.

It is well settled that "declaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act — as where an insurance company has already denied a claim."[10] However, the mere fact that an insurer initially denies a claim does not always preclude that insurer from re-evaluating its position.[11] Where, as here, an insurer initially denies a claim, but subsequently opts to defend the insured under a reservation of rights letter, that insurer is not precluded from seeking a declaratory judgment to ascertain its rights.[12] The case cited by Danforth, *Drawdy v. Direct Gen. Ins. Co.*,[13] does not require a different result, as the insurer in that case *never* defended its insured nor issued any reservation of rights letter.

3. Next, Danforth contends GEICO's claim for declaratory judgment should have been dismissed because GEICO failed to prove the necessity for immediate relief from its duty to defend. This enumeration is without merit.

To be entitled to a declaratory judgment, a party " 'must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest.' "[14] Where an insurance company denies coverage for a pending action against its insured and attempts to relieve itself of the obligation to defend the action, there "is such immediacy of choice imposed upon it as to justify and require the adjudication" of a declaratory judgment action.[15]

This Court has concluded that there is no immediacy of choice imposed upon an insurer as to justify a declaratory judgment action where the insurer must defend *its insured* in an underlying tort

---

[10] *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 18 (413 SE2d 450) (1992).

[11] See *Colonial Ins. Co. &c. v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391 (556 SE2d 486) (2001).

[12] See id.

[13] 277 Ga. 107 (586 SE2d 228) (2003).

[14] *Eberhardt v. Unigard Mut. Ins. Co.*, 142 Ga. App. 102, 103 (235 SE2d 616) (1977).

[15] *U. S. Fidelity & Guaranty Co. v. Watson*, 106 Ga. App. 748, 750-751 (1) (128 SE2d 515) (1962).

action, whether it is found to be an excess or a primary carrier.[16] Danforth points out GEICO is "not attempting to negate coverage or their duty to defend under the Aaron Bulman policy." However, there is no basis to conclude that GEICO is obligated to defend *Elizabeth* Bulman under Aaron's policy.[17] And, Danforth has not provided any authority for her apparent position that a declaratory judgment is not available to GEICO to determine coverage under Bulman's policy because it is obligated to defend her son under a separate policy. In the absence of such authority, we conclude that, under these circumstances, there is an immediacy of choice imposed upon GEICO as to justify a declaratory judgment.[18] Thus, the trial court did not err in denying Danforth's motion to dismiss on this basis.

4. In her next claim of error, Danforth argues that the trial court erred in denying her cross-motion for summary judgment. Again, we disagree.

(a) First, Danforth insists that Bulman's request to delete the Taurus from her policy was ineffective because it was not made in writing as required by OCGA § 33-24-44.1. OCGA § 33-24-44.1 (a) provides that "[a]n insured may request cancellation of an existing insurance policy by . . . making a written request for cancellation of an insurance policy to the insurer."

Contrary to Danforth's contention otherwise, the policy was not cancelled; it was merely modified. Black's Law Dictionary (4th ed. 1951) defines "cancellation" as the "[a]bandonment of [a] contract." There is no evidence that Bulman attempted to abandon or cancel her existing GEICO policy. Instead, she simply modified her policy by deleting the Taurus therefrom, and retained the policy for her other vehicles.[19] Thus, the deletion request was proper and the trial court did not err in denying Danforth's motion for summary judgment on this basis.

---

[16] See *Eberhardt*, supra; see also *Govt. Employees Ins. Co. v. State Farm &c. Ins. Co.*, 195 Ga. App. 470 (394 SE2d 800) (1990); *State Farm &c. Ins. Co. v. Astro Leasing*, 194 Ga. App. 515, 517-518 (390 SE2d 885) (1990); *U. S. Fidelity*, supra.

[17] Danforth states in her brief that "[a] policy of insurance was issued by [GEICO] to Aaron Bulman with liability limits of $25,000[ ] per person which covers the liability of both Elizabeth Bulman and Aaron Bulman and forms the basis of [GEICO's] duty to defend them in the underlying tort action." The record cite Danforth provides in support of this statement refers to a single page of GEICO's brief to the trial court in support of its summary judgment motion; the page does not support Danforth's appellate assertion that Aaron's policy covers both Aaron and Danforth. Instead, it appears that Danforth has misconstrued GEICO's statement in its summary judgment brief that "[t]he parties do not dispute that *Sarah Danforth* is entitled to coverage under the GEICO CASUALTY policy issued to Aaron Bulman. The dispute between the parties is over coverage to Sarah Danforth under the GEICO policy issued to Elizabeth Bulman." (Emphasis supplied.)

[18] See *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 333-335 (2) (419 SE2d 143) (1992).

[19] See *Ramsdell v. State Auto Mut. Ins. Co.*, 206 Ga. App. 357, 359 (3) (425 SE2d 661) (1992); *Progressive Preferred Ins. Co. v. Davis*, 199 Ga. App. 598, 599 (405 SE2d 529) (1991).

(b) Next, we address Danforth's assertion that the deletion of the Taurus from Bulman's policy was of no effect because (1) GEICO has not proved that it provided her with a written copy of the endorsement within a reasonable period of time of its issuance as required by OCGA § 33-24-14; and (2) the modification to Bulman's policy was not supported by consideration.

First, pretermitting whether Bulman received a copy of the endorsement before the collision at issue, GEICO is not estopped from relying on the deletion of the Taurus. "When an insurance company fails to mail or deliver the insurance policy to the insured within a reasonable amount of time after its issuance, the insurance company may still rely on exclusions contained in the policy *of which the insured otherwise had notice.*"[20] Bulman made the deletion request, and therefore clearly had prior notice of the exclusion of the Taurus from her policy. Accordingly, the trial court properly denied Danforth's motion for summary judgment on this basis.[21]

Danforth's argument that the modification was not supported by consideration also fails. Consideration is indisputably required for the valid modification of coverage provisions of an insurance policy, including when the effect of the modification is to limit risks.[22] Consideration may be shown by a reduction in premium, forbearance by the insurance company to cancel the policy, and other ways.[23] Here, the evidence shows that GEICO agreed to reduce Bulman's premium in exchange for her request that the Taurus be deleted from her policy. Jones, the GEICO claims coverage underwriter, stated unequivocally that the deletion resulted in a credit to Bulman. Although Bulman denies receipt of a refund check, she does not dispute that her premiums were reduced. Moreover, GEICO issued a new policy for Aaron covering the Taurus, which also may constitute valid consideration.[24] Under these circumstances, we conclude that Bulman's request to delete the Taurus from her policy was supported by consideration, and that the trial court did not err in deciding this issue adversely to Danforth.[25]

(c) Danforth further alleges that GEICO is estopped from claiming noncoverage because, with full knowledge of all relevant facts, it

[20] (Punctuation omitted; emphasis supplied.) *Williams v. Fallaize Ins. Agency*, 220 Ga. App. 411, 415 (3) (469 SE2d 752) (1996).

[21] See id.

[22] See *Patterson v. Cotton States Mut. Ins. Co.*, 221 Ga. 878, 882 (148 SE2d 320) (1966).

[23] See *State Farm Mut. Ins. Co. v. Potts*, 131 Ga. App. 26, 28 (1) (205 SE2d 43) (1974); *Adair v. American Liberty Ins. Co.*, 116 Ga. App. 805, 806 (2) (159 SE2d 174) (1967).

[24] See *Brannen v. Gulf Life Ins. Co.*, 201 Ga. App. 241, 242-243 (2) (410 SE2d 763) (1991) (issuance of new policy grounded upon consideration).

[25] See *State Farm v. Potts*, supra; *Adair*, supra; *Brannen*, supra.

(1) stated in writing, in two separate letters to her lawyer, that Bulman's policy offered excess or secondary coverage, without any reservation of rights; (2) paid property damage and personal injury claims initially under the claim number for Bulman's policy, and then under a consolidated claim number for Bulman's and Aaron's policies; (3) commenced a defense of the underlying tort under Bulman's policy — with knowledge of all relevant facts — without timely giving notice of its reservation of rights; and (4) failed to seek a stay of the underlying tort action. However, because there was no coverage for the collision at issue under Bulman's policy, GEICO did not waive its right to contest coverage.

" '[A]n insurer may waive any provision in an insurance policy inserted for its benefit, and may waive any condition or limitation in the policy upon which it could otherwise rely.' "[26] It is well established, however, that " '[t]he doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom.' "[27]

Here, neither Danforth nor the Bulmans had any right to expect coverage under Bulman's policy for the collision at issue because the express language of the policy foreclosed coverage.[28] Bulman's policy provided that GEICO would pay damages which its *insured* became legally obligated to pay because of bodily injury, sustained by a person, and "damage to or destruction of property, arising out of the ownership, maintenance or *use* of the *owned auto* or a *non-owned auto*." The policy defines "owned auto" as

> (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
> (b) a trailer, owned by you;
> (c) a private passenger, farm or utility auto ownership of which you acquire during the policy period or for which you enter into a lease during the policy period for six months or more, if:
> (i) it replaces an owned auto as defined in (a) above; or

---

[26] *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865 (1) (303 SE2d 43) (1983).

[27] Id.

[28] Notably, Danforth does not contend that Bulman's policy covered the collision at issue (with the exception of her argument that Bulman's deletion of the Taurus from her policy was ineffective, which we have already rejected in Division 4 (a) and (b)). Instead, she argues GEICO's actions operated as a waiver of its right to contest coverage and rendered a declaratory judgment inappropriate.

> (ii) we insure all private passenger, farm and utility autos
> owned or leased by you on the date of the acquisition, and you
> ask us to add it to the policy no more than 30 days later;
> (d) a temporary substitute auto.

Clearly, as the Taurus had been deleted from Bulman's policy, it does not qualify as an owned auto.

Neither does the Taurus qualify as a "non-owned auto."[29] Bulman's policy defines a "non-owned auto" as "an automobile or trailer not owned by or furnished for the regular use of either you or a relative, other than a temporary substitute auto." Under the policy, a "relative" is "a person related to [the insured] who resides in [the insured's] household." Aaron, who lived with his mother at the time of the collision, was a "relative" under the policy.[30] Although Bulman purchased the Taurus for Aaron's use and the vehicle was titled in her name, that does not alter the fact that under the plain terms of the policy, it did not qualify as a nonowned auto.

Furthermore, GEICO is not estopped from denying coverage. As we have previously explained,

> "[t]he doctrines of waiver and estoppel are not to be extended
> so as to make a new contract, or to radically change the terms
> of the policy so as to cover additional subject-matter, or
> causes of loss, or causes of loss expressly excluded from the
> coverage of the policy. Neither waiver nor estoppel can be
> used to create a liability not created by the contract and
> never assumed by the insurer under the terms of the policy."[31]

Moreover, GEICO's defense of Bulman in the tort suit does not bar it from asserting noncoverage in the declaratory judgment action. Danforth argues that GEICO is precluded from asserting noncoverage because it failed to comply with the prerequisites for bringing a declaratory judgment action set forth in *Richmond v. Ga. Farm &c. Ins. Co.*[32] However, as our Supreme Court has held, "[t]he rule enunciated in *Richmond* is based on principles of fairness, and, in determining whether an insurer has met the requirements thereof,

---

[29] See *Lewis v. State Farm &c. Ins. Co.*, 247 Ga. App. 518, 519-520 (544 SE2d 212) (2001).

[30] See *Danforth*, supra at 533.

[31] *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, 170 Ga. App. 545, 547 (2) (317 SE2d 845) (1984); see also *Andrews v. Ga. Farm &c. Ins. Co.*, 226 Ga. App. 316, 317 (487 SE2d 3) (1997) (waiver and estoppel do not operate to preclude an insurer's claim of noncoverage where to do so would require the redrafting of the insured's policy to include a risk specifically excluded by mutual agreement); *Sargent*, supra.

[32] 140 Ga. App. 215 (1) (231 SE2d 245) (1976).

the crucial inquiry is whether the rights of the *insured* have been adequately protected."[33] Thus, we question whether Danforth, a third party, has standing to argue that GEICO failed to comply with the rules set forth in *Richmond*. Nevertheless, any such noncompliance does not preclude this declaratory judgment action because neither Danforth nor Bulman — to the extent she adopts this argument — can show that any prejudice resulted from GEICO's conduct.[34]

5. Danforth also contends that the trial court erred in granting GEICO's motion for summary judgment, for the same reasons she argues it erred in denying her motion for summary judgment. For the same reasons that the denial of Danforth's summary judgment motion was proper, we conclude that the trial court did not err in granting summary judgment to GEICO.[35]

### Case No. A06A1424

6. In her appeal, Bulman adopts all of the arguments of Danforth, arguing that the trial court erred in denying her own motions to dismiss and for summary judgment, and in granting GEICO's summary judgment motion. Initially, we question whether Bulman can even raise such arguments, as the trial court does not appear to have ruled on such motions. In any event, for the reasons set forth in Divisions 1 through 3, the arguments lack merit.

7. Finally, we address Bulman's argument that GEICO is estopped from denying coverage under her policy because, while knowing all of the facts regarding ownership of the Taurus and Aaron's residency, it issued the deletion endorsement that left her uncovered for Danforth's vicarious liability claims. Specifically, Bulman asserts that GEICO had a duty to inform her that deletion of the Taurus from her policy would leave her exposed for any vicarious liability claims. It does not appear, however, that Bulman presented this argument to the trial court.[36] Thus, this argument is waived on appeal, as it was not raised and ruled upon in the trial court.[37]

---

[33] (Emphasis supplied.) *Kelly v. Lloyd's of London*, 255 Ga. 291, 293-294 (336 SE2d 772) (1985).

[34] See *Meeler v. Nat. Ins. Assn.*, 214 Ga. App. 110, 111 (1) (446 SE2d 738) (1994); *Southern Gen. Ins. Co. v. Buck*, 202 Ga. App. 103, 105 (2) (413 SE2d 481) (1991); *Prescott's Altama Datsun*, supra.

[35] See Division 4, supra.

[36] Bulman has failed to provide a reference to the record to show where she made this argument before the trial court. Arguments unsupported by reference to the record or transcript to show that they were raised in the trial court are considered abandoned. See *Scott Transfer, Inc. v. Excalibur Ins. Co.*, 149 Ga. App. 46, 49 (2) (253 SE2d 438) (1979).

[37] See *Rental Equip. Group v. MACI*, 263 Ga. App. 155, 160 (2) (587 SE2d 364) (2003).

Notwithstanding her waiver, however, this argument provides no basis for reversal. Although Bulman concedes that there is no case in Georgia on point, she essentially asks this Court to create a new doctrine of estoppel under which an insurer cannot rely upon changes the *insured* makes to a policy without first explaining to the insured every possible legal ramification of such change. In this case, Bulman argues that GEICO's failure to explain that she might be liable under the family purpose doctrine for a collision caused by her son should preclude the insurer from denying coverage. However, the law is well settled that it is the insured's obligation to read and examine his or her insurance policy to determine the extent of coverage.[38] And we decline to impose upon insurers a new duty to explain all possible ramifications of an insured's decision to modify coverage.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 16, 2006 — ■

*Brack & Westee, Philip L. Westee,* for appellant (case no. A06A1423).
*Manko & Lerow, J. Stephen Manko,* for appellant (case no. A06A1424).
*Cruser & Mitchell, Joseph R. Cruser,* for appellees.

---

[38] See, e.g., *Rogers & Sons, Inc. v. Santee Risk Managers,* 279 Ga. App. 621, 625 (1) (631 SE2d 821) (2006).