**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 16, 2019**

# In the Court of Appeals of Georgia

A19A0859. UNITED SPECIALTY INSURANCE CO. v. CARDONA-RODRIGUEZ.

A19A0860. LEWIS v. UNITED SPECIALTY INSURANCE CO.

BROWN, Judge.

Pedro Cardona-Rodriguez ("Rodriguez") filed a personal injury action against Gino Lewis and Lewis' car washing business (collectively "Lewis") for injuries Rodriguez sustained when a car wash employee struck Rodriguez with Rodriguez's vehicle while it was being serviced, resulting in the amputation of his leg. While that suit was pending, United Specialty Insurance Company ("United"), Lewis' insurer, filed the present declaratory judgment action against Rodriguez and Lewis, seeking a determination that the maximum limit afforded by Lewis' "Commercial Lines Policy" for the accident is $25,000 because the employee was operating Rodriguez's vehicle without a valid Georgia driver's license. United and Rodriguez filed cross-

motions for summary judgment. The trial court granted summary judgment to Rodriguez based upon its conclusion that a driver's license is not required to operate a vehicle on private property in this State, and ruled that the policy limit for the accident is $100,000. The trial court also denied Lewis' motion to open default and granted United's motion for default judgment against Lewis. In Case No. A19A0859, United appeals the grant of summary judgment to Rodriguez and the denial of its cross-motion for summary judgment. In Case No. A19A0860, Lewis appeals the grant of United's motion for default judgment. We have consolidated the appeals for review.

The underlying facts of this case are largely undisputed. On October 16, 2016, Rodriguez was at Lewis' car wash business, "Gino's Car Wash," to have his 2008 Ford Econoline van cleaned. Rodriguez surrendered possession of the van to an employee of Gino's Car Wash and sat down on a bench in front of the business. Larry Evans, a car wash employee, was told to move the van and "rotate the tires" so that another employee could finish servicing the van. As Evans shifted the van into reverse, it drove onto the sidewalk, striking Rodriguez and crushing his right leg. Rodriguez's right leg was amputated above the knee as a result of the injury. Although Evans knows how to drive, he has never had a driver's license because he

2

is legally blind.[1] Evans is 41 years old and has lived in Georgia continuously since

_____

[1] United issued to Lewis a "Commercial Lines Policy" for his car wash business, with a policy period of June 22, 2016, to June 22, 2017, and a liability limit of $100,000 per accident. The policy included a garage coverage endorsement providing as follows:

> The maximum limit of liability afforded by this policy for an "accident" involving an "insured" driver under the age of twenty-one (21) or anyone operating an "auto" without a proper or valid operator's license, as required by the state in which the "auto" is operated, shall not exceed the basic financial responsibility limit required by the state in which the "accident" occurs.

The basic financial responsibility limit required by Georgia is governed by OCGA § 33-7-11 (a) (1), which provides as follows:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be: (A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property. . . .

OCGA § 33-7-11 (a) (1). See *Johnson v. Ga. Farm Bureau Mut. Ins. Co.*, 273 Ga. App. 623, 625 (1) (616 SE2d 459) (2005) (citing OCGA § 33-7-11 (a) (1) (A), and stating that Georgia requires a minimum of $25,000 in liability coverage).

2008.

On November 11, 2016, Rodriguez made a settlement demand in the amount of Lewis' "'policy limit of $100,000.'" On January 5, 2017, United rejected the demand on the ground that it demanded more than $25,000, and offered to pay $25,000 based upon its application of the endorsement capping liability at $25,000 for unlicensed drivers. Rodriguez rejected that offer, and sued Lewis for damages on January 10, 2017, asserting claims for negligence, negligence per se, respondeat superior, lost wages, and punitive damages.

Two weeks after Rodriguez filed suit, United's claims administrator sent to Lewis a "reservation of rights" letter advising that an attorney had been assigned to provide a defense to Lewis, and that "the limits of liability coverage under [the] policy are $25,000, which is the basic financial responsibility limit required by the state of Georgia[, and that] the limit of $25,000 does apply to the settlement of all claims made against any insured(s) under [the] policy." The letter also stated that "[c]overage is available for defense and indemnity to . . . Lewis." And that "[t]he costs of your defense are not subject to [the] liability limit [of $25,000]." On that same date, United's coverage counsel, sent a letter to Rodriguez stating that United was under no legal duty to negotiate or respond to a demand where the "demand

exceeded the policy limits," and reiterated that United was not opposed to paying Rodriguez its asserted policy limit amount for a release of all United insureds, and again extended "its offer of" $25,000. On January 30, 2017, counsel for Rodriguez rejected United's offer, noting that United previously represented the policy as being $100,000, and that he had not seen any evidence tending to prove that the policy limit is only $25,000.

United filed a petition for declaratory judgment against Rodriguez, Lewis, and Evans on March 3, 2017, alleging that the maximum policy limit for the accident was $25,000 because Evans was unlicensed at the time of the accident, and claiming that because of the "positions asserted by the other parties to this matter," it was faced with a dispute and uncertainty as to its rights and status under Lewis' policy. Lewis did not file an answer to United's petition, but moved to dismiss it, alleging the absence of an actual controversy. The trial court denied Lewis' motion to dismiss, but granted United's motion for default judgment against Lewis and Evans, simultaneously denying Lewis' motion to open default.

In a separate order, entered within a day of the entry of default judgment against Lewis and Evans, the trial court granted summary judgment to Rodriguez, ruling that Lewis is insured to the policy's full limit of $100,000 because, pursuant

5

to OCGA § 40-5-20 (a), Evans was not required to have a driver's license to operate the vehicle on private property. As set out above, United appeals the trial court's summary judgment ruling, and Lewis appeals the entry of default judgment against him. For the reasons that follow, we vacate the summary judgment ruling, and remand this case for the trial court to dismiss this nonjusticiable action.

In the trial court, Lewis disputed whether this case presents a justiciable controversy in his motion to dismiss, which the trial court denied after a hearing. Lewis did not seek interlocutory appellate review of that ruling or otherwise raise the justiciable controversy issue in this appeal. Nevertheless, the issue is a jurisdictional one, which we consider sua sponte. See *Fulton County v. City of Atlanta*, 299 Ga. 676, n.2 (791 SE2d 821) (2016). See also *Fourth Street Baptist Church of Columbus v. Bd. of Registrars*, 253 Ga. 368, 369 (1) (320 SE2d 543) (1984); *Effingham County Bd. of Commrs. v. Effingham County Indus. Dev. Auth.*, 286 Ga. App. 748, 749 (650 SE2d 274) (2007); *Adams v. Atlanta Cas. Co.*, 225 Ga. App. 482, 484 (1) (484 SE2d 302) (1997).

"The purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."

6

(Punctuation omitted.) *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (586 SE2d 228) (2003), citing OCGA § 9-4-1.

> However, where the rights of the parties have already accrued and there are no circumstances showing any necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest, the plaintiff is not entitled to a declaratory judgment. The declaratory judgment action makes no provision for a judgment which is advisory.

(Citation and punctuation omitted.) *Morgan v. Guar. Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997). In this regard, "[d]eclaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act — as where an insurance company has already denied a claim." (Citation and punctuation omitted.) Id. at 345. See also *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992).

In this case, even though United asserted that it was providing a defense for Lewis under a reservation of rights, it unequivocally rejected Rodriguez's $100,000 demand for payment under the policy and offered him $25,000. The reservation of rights letter did not assert that United was *uncertain* as to its rights or the policy

limits, or advise Lewis that it was unclear how to proceed under the policy given that Evans was operating the van without a license. Instead, United's litigation specialist unequivocally asserted that "the limits of liability coverage under your policy are $25,000, which is the basic financial responsibility limit required by the State of Georgia." Coverage counsel also reached out to Rodriguez and his counsel in a letter, explaining the deficiencies in Rodriguez's demand letter and unequivocally denying Rodriguez's demand under the policy stating that United "had no legal duty to respond, much less correct or negotiate, to [Rodriguez's] Demand Letter when the demand exceeded the policy limits." This letter never stated that United was uncertain about how to proceed given that Evans was an unlicensed driver. Nor did United state it would reconsider its position if additional information was provided to it. See *Colonial Ins. Co. of California v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391, 393 (1) (556 SE2d 486) (2001) (insurer not estopped from seeking declaratory judgment where insurer's letter of denial indicated that it would reconsider its position if the insured disagreed and/or could provide additional information "that may have a bearing on" the coverage issue). See also *Drawdy*, 277 Ga. at 109 ("insurer not estopped from changing its position after an initial denial of coverage and is allowed to seek declaratory judgment in those situations where the insurer has both indicated

its willingness to reconsider its insured's claim *and* has positively demonstrated that it considers the question of coverage to still be in issue") (emphasis supplied). United continued to endorse its position in its petition for declaratory judgment, asserting unequivocally that because the accident involved the operation of an auto by someone without a valid driver's license, "[t]he basic financial responsibility limit required by Georgia is $25,000." And, "[t]he maximum limit afforded by the [p]olicy for the accident . . . is $25,000." Had United indicated in any of its correspondence with Lewis and/or Rodriguez that it was uncertain as to its obligation under the policy, our decision might be different. On the contrary, United has asserted all along — with *absolute certainty —* that coverage under the policy was limited to $25,000.

"The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated. As many times pointed out by this [C]ourt, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole." (Citations and punctuation omitted; emphasis in original.) *Chastain v. U. S. Fidelity & Guar. Co.*, 190 Ga. App. 215, 216 (378 SE2d 397) (1989). In this case, United elected to deny Rodriguez's demand for the full $100,000 limit of the policy, prompting Rodriguez to file suit. "[A]n insurer's duty

9

to settle arises when the injured party presents a valid offer to settle within the insured's policy limits." *First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489, 492-493 (1) (826 SE2d 71) (2019). United consistently denied the existence of policy limits of $100,000. Accordingly, United is not in need of any direction from the court with respect to future conduct on its part. See, e.g., *Builders Ins. Group v. Ker-Wil Enterprises*, 274 Ga. App. 522, 523 (618 SE2d 160) (2005) (affirming dismissal of workers' compensation insurer's declaratory judgment action "because [insurer] had already denied coverage when it filed its petition for declaratory relief, [and] was not uncertain or insecure of its rights, status, or legal relations with respect to the making of that decision"); *Adams*, 225 Ga. App. at 485 (1) (insurer waived its right to seek declaratory judgment because it earlier had denied coverage and was in no need of judicial guidance; "[h]aving thus denied coverage, the insurer removes any doubt as to its duties under the contract of insurance and the insurer's firm decision is that it has no duty and, thus, is not met with uncertainty as to future acts") (citation omitted); *Sentry Ins. v. Majeed*, 194 Ga. App. 276 (390 SE2d 269) (1990) (affirming dismissal of declaratory judgment action filed by insurer where it had taken firm position that it did not insure vehicle involved in accident and had no obligation to insured for any claims or damages and no suits were pending), aff'd, *Sentry Ins. v. Majeed*, 260 Ga.

10

203 (391 SE2d 649) (1990). Compare *Fountain*, 262 Ga. at 17 (declaratory judgment action proper where insurer's response to demand letter stated that insurer was unable to determine "whether the policy proved coverage under the circumstances"); *Barclay v. Stephenson*, 337 Ga. App. 365, 371 (3) (a) (787 SE2d 322) (2016) (declaratory relief appropriate where there was no evidence that insurer denied coverage; on the contrary, it stated in its petition for declaratory judgment that coverage was uncertain and that the policy might not cover the claims).

Setting aside whether *Danforth v. Govt. Employees Ins. Co.*, 282 Ga. App. 421 (638 SE2d 852) (2006), properly extended our holding in *Colonial*, supra, it is distinguishable. In *Danforth*, the insured's son was involved in an automobile accident which injured Sarah Danforth. After Danforth filed a tort action, GEICO, the insured's insurance company, filed a declaratory judgment action seeking a declaration that it was free from liability under one of two policies at issue, one covering the insured and one covering her son. GEICO initially sent a letter to its insured denying coverage under her policy. It then sent a reservation of rights agreement to the insured, indicating its intention to "'maintain its right to contest coverage [under her policy], while at the same time affording the protection of a defense to [the insured].'" 282 Ga. App. at 422. In that case, we affirmed the denial

11

of a motion to dismiss GEICO's declaratory judgment action, finding that even though GEICO initially denied coverage, it then reevaluated its position specifically stating in its reservation of rights letter that it "'maintain[ed] its right to contest coverage.'" Id. at 424 (2). In this case, unlike *Danforth*, United's conduct in defending under a reservation of rights does nothing to create a justiciable controversy; United admits policy limits of $25,000 under which it had a clear duty to provide a defense, but has steadfastly denied coverage over that amount, without qualification. United has no uncertainty with regard to its duty to defend and asserted none in its petition for declaratory judgment. Cf. *Majeed*, 194 Ga. App. at 278 (insurer had no uncertainty with regard to duty to defend because there was no pending action). Indeed, United's first letter acknowledged that coverage was available for a defense of Lewis, and not subject to the liability limit of $25,000. This is a far cry from providing a defense to an entire claim for which the insurer had previously denied coverage, but then reassessed that denial, as in *Danforth*, supra.

We also note, as the Supreme Court of Georgia did in *Drawdy*, that policy reasons support dismissal of United's declaratory judgment action. 277 Ga. at 110. "An insurer may not refuse to pay (under its policy) and then use declaratory judgment procedure as a means of avoiding bad faith penalties." (Citation and

12

punctuation omitted.) Id. The Declaratory Judgment Act is designed to protect parties from "uncertainty with respect to future conduct, not from the adverse consequences of actions already undertaken." Id.

Because the trial court was without jurisdiction to render a declaratory judgment, the summary judgment rendered on United's petition for a declaratory judgment was invalid. Accordingly, we vacate its judgment and remand this case with direction for the trial court to enter an order of dismissal.[2] See *Fulton County*, 299 Ga. at 681.

*Judgment vacated and case remanded with direction in Case No. A19A0859. Appeal dismissed as moot in Case No. A19A0860. Barnes, P. J., and Mercier, J., concur.*

---

[2] Our decision renders moot Lewis' claim in Case No. A19A0860 that the trial court erred in granting United's motion for default judgment against him.