**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2024**

# In the Court of Appeals of Georgia

A24A0321. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA v. DRAKE.

WATKINS, Judge.

Following an off-campus altercation, the University of Georgia ("UGA") suspended Elijah Drake, a student at the school. The superior court granted Drake's petition for writ of certiorari, reversed his suspension, and nullified certain provisions of UGA's code of conduct. The Board of Regents of the University System of Georgia ("BOR") appeals, arguing that: (1) the decision was not a final, quasi-judicial decision that was subject to certiorari review; (2) the superior court erred by exercising jurisdiction over an academic decision; and (3) even if the matter came within the superior court's certiorari jurisdiction, the court erred by declaring the Conduct Regulations to be entirely void. We conclude that the superior court had jurisdiction

to consider this petition. While we agree with the superior court's conclusion that UGA's Hearing Panel did not properly consider Drake's self-defense claims, the correct remedy was to remand to the Hearing Panel for reconsideration of that issue. Accordingly, we vacate and remand with direction.

On certiorari review of a lower tribunal's ruling, the superior court's "scope of review shall be limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence."[1] "On appeal, this Court's duty is not to review whether the record supports the superior court's decision; instead, we must determine whether the record supports the decision of the lower tribunal."[2] We review questions of law de novo.[3]

So viewed, the record shows that UGA initiated disciplinary proceedings against Drake after he had a physical altercation with another UGA student, Caitlin Bargouti, at an off-campus bar. UGA later initiated disciplinary proceedings against

---

[1] OCGA § 5-4-12 (b) (2022). Drake filed his petition in October 2022. The statutes governing certiorari petitions were repealed, effective July 1, 2023, and replaced with a "petition for review" procedure. See OCGA § 5-3-2.

[2] *Longo v. City of Dunwoody*, 351 Ga. App. 735, 739 (832 SE2d 884) (2019).

[3] See *Adams v. Neykov*, 356 Ga. App. 884, 885 (849 SE2d 712) (2020); see also *Goddard v. City of Albany*, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009).

Bargouti for the same incident. A UGA investigator interviewed Bargouti, Drake, and other witnesses to get their accounts of the encounter; it appears to have started as a playful exchange and then escalated into physical violence.

UGA's Office of Student Conduct investigated Drake for possessing false identification, drinking underage, endangering the health or safety of another person, and engaging in disorderly conduct caused by intoxication. Drake later admitted to the fake ID and underage drinking violations. As to the other two charges, UGA's Code of Conduct provided that the following actions are prohibited:

> Conduct Regulation 3.3 — Conduct that threatens or endangers the health or safety of another person, including but not limited to physical violence, abuse, intimidation, and/or coercion; or violation of a legal protective order.

> Conduct Regulation 4.3 — Disruptive or disorderly conduct caused by the influence of alcohol and/or other drugs.

As to Bargouti, UGA's Office of Student Conduct investigated her for endangering the health or safety of another person and malicious or unwarranted damage to property.

UGA's Hearing Panel held a joint hearing on the charges against Drake and Bargouti. As to Bargouti, the Panel concluded that there was insufficient evidence to support a finding that Bargouti had threatened Drake. With respect to Drake, however, the Panel concluded that Drake had violated all four provisions of the Code of Conduct. Significantly, the Panel found that the Code of Conduct did not allow for a self-defense claim:

> While Mr. Drake stated . . . that his actions were motivated by self-defense[,] the Panel concluded that self-defense was insufficient for Mr. Drake's actions towards Ms. Bargouti since the Code of Conduct does not include verbiage related to self[-]defense. Regardless of the intent Mr. Drake had for his action of taking Ms. Bargouti to the ground and restraining her, the Panel found the physical act towards Ms. Bargouti constituted conduct that threatened her health and safety by resulting in injuries stated above.

Among other sanctions, the Panel suspended Drake from UGA through the end of the Fall 2022 semester.

Drake appealed the decision to UGA's Vice President of Student Affairs, who upheld the Panel's decision. The Vice President noted that Drake's "claims of self-defense, [assertion that Bargouti removed his eyeglasses], and past or future risk may

be considered as potential mitigating factors but do not excuse your actions in any way under our Code of Conduct." Drake then appealed to UGA's President, who also upheld the Panel's decision. Drake filed for discretionary review to the BOR, and the BOR upheld UGA's decision.

Drake filed a petition for writ of certiorari to the superior court. The superior court granted the petition, reversed his suspension, and nullified rules 3.3 and 4.3 of UGA's Code of Conduct. The court reasoned that the conduct rules "necessarily" prohibited claims of self-defense permitted under OCGA § 16-21-3 and were thus void. We granted the BOR's application for discretionary review, and this appeal followed.

1. The BOR raises a claim of sovereign immunity, arguing that judicial review was not available to Drake because the Hearing Panel's decision to sanction him was not a final, quasi-judicial decision such that it was subject to certiorari review.

The writ of certiorari is available for the correction of errors committed by a person who was acting in a quasi-judicial capacity.[4] However, the writ of certiorari will

---

[4] OCGA § 5-4-1 (a) (2022). As noted above, the statutes governing certiorari petitions were repealed, effective July 1, 2023, and replaced with a "petition for review" procedure.

not lie from the exercise of "only an executive or administrative power[.]"[5] The BOR

contends that the Panel's decision was administrative rather than quasi-judicial.

There are three essential characteristics of a quasi-judicial act:

First, a quasi-judicial act is one as to which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure. Second, a quasi-judicial act is one that requires a decisional process that is judicial in nature, involving an ascertainment of the relevant facts from evidence presented and an application of preexisting legal standards to those facts. Third, a quasi-judicial decision reviewable by writ of certiorari is one that is final, binding, and conclusive of the rights of the interested parties.[6]

In its appellate brief, the BOR argues that neither the second prong, that there

was a judicial decisional process, nor the third prong, that the decision was final, was

satisfied in this case. However, the BOR conceded before the superior court that the

---

[5] *Housing Auth. of the City of Augusta v. Gould*, 305 Ga. 545, 551 (2) (826 SE2d 107) (2019).

[6] (Citations and punctuation omitted.) Id.

first two prongs were satisfied; thus, on appeal we focus only on the third prong — the finality of the decision.[7]

The BOR contends that the decision by the Hearing Panel was not final, binding, and conclusive because the Vice President, President, or BOR could have overturned the Panel's decision. But the possibility of an appeal did not render the Hearing Panel's decision non-final.[8] Both the Panel's decision and UGA's Code of Conduct indicated that Drake "may" appeal within five days, but "[t]he purpose of appeal procedures [was] to provide the student with the opportunity to bring forward questions regarding substantive or procedural errors that occurred during the process. The appeal process [was] not intended to grant a new hearing at a higher level." Thus, absent an appeal, the decision of the Hearing Panel was final, binding, and conclusive,

---

[7] See *Danforth v. Govt. Employees Ins. Co.*, 282 Ga. App. 421, 429 (7) (638 SE2d 852) (2006) (holding that an argument is waived on appeal where it is not raised and ruled upon in a trial court).

[8] Cf. *Laskar v. Bd. of Regents of Univ. Sys. of Ga.* 320 Ga. App. 414, 418 (740 SE2d 179) (2013) (hearing committee's decision was non-final, and therefore administrative rather than quasi-judicial in nature, because the committee's findings and recommendations were not binding on the ultimate decision maker).

such that the decision was quasi-judicial.[9] Accordingly, review properly fell within the ambit of the superior court's certiorari jurisdiction.

2. The BOR also argues that the Panel's decision was an academic decision and was, therefore, a non-justiciable controversy. We disagree and conclude that the decision was subject to certiorari proceedings.

"It is well settled that disputes concerning academic decisions made by public institutions of learning present no justiciable controversy."[10] This doctrine

> stems from confidence that school authorities are able to discharge their academic duties in fairness and with competence. It is born alike of the necessity for shielding the courts from an incalculable new potential for lawsuits[; i]t protects every teacher from the cost and agony of litigation initiated by pupils and their parents who would rely upon the legal process rather than the learning process. It protects every school system — all of them laboring under pressures of financing, personnel problems

---

[9] See *Mack II v. City of Atlanta*, 227 Ga. App. 305, 309 & n. 3 (1) (489 SE2d 357) (1997) (holding that a decision of the City of Atlanta Bureau of Purchasing & Real Estate, which was "final and conclusive unless any person adversely affected by the decision appeals administratively to the procurement appeals hearing officer[,]" was a quasi-judicial decision) (citation and punctuation omitted); cf. *Gould*, 305 Ga. at 555-557 (4) (decision of hearing officer was not final, binding, and conclusive when the decision was only meant to be an initial determination and "effectively advisory").

[10] *Bd. of Regents of Univ. Sys. of Ga. v. Houston*, 282 Ga. App. 412, 414 (1) (638 SE2d 750) (2006).

and student discipline, academic performance, taxpayer revolt and patron unrest . . . from an added and unbearable burden of continuous legal turmoil.[11]

Accordingly, "unless a deprivation of major proportion" is at issue, the superior court must defer to the university's disciplinary decision.[12]

The BOR argues that *Board of Regents of University System of Georgia v. Houston* controls here. In *Houston*, we held that Georgia Tech's decision to suspend a student and revoke his membership to the varsity football team due to the student's admitted participation in a drug sale was not a deprivation of major proportion.[13] In our opinion, we emphasized that the student "suffered no deprivation of constitutional or statutory rights."[14]

In this case, however, Drake alleged that UGA violated his rights under OCGA § 16-3-21 (c), which provides: "Any rule, regulation, or policy of any agency of the state or any ordinance, resolution, rule, regulation, or policy of any county,

---

[11] (Citations and punctuation omitted.) Id.

[12] Id.

[13] *Houston*, 282 Ga. App. at 415 (1).

[14] Id. (citing OCGA § 50-13-19 (h) (1)).

municipality, or other political subdivision of the state which is in conflict with this Code section [on self-defense] shall be null, void, and of no force and effect." Given the scope of this provision, and because Drake is correct that UGA violated his rights under OCGA § 16-3-21 (c), as explained in Division 3 below, "a deprivation of major proportion" was at issue in this proceeding.[15] Thus, the superior court was presented with a justiciable controversy, rather than an academic dispute.

3. Finally, the BOR contends that the superior court imposed improper remedies in this case. In its decision on Drake's petition, the superior court concluded that the Hearing Panel had failed to consider Drake's right to self-defense. Additionally, the court concluded that Conduct Regulations 3.3 and 4.3 were void because they did not allow for self-defense. The court reversed Drake's suspension and ordered that Conduct Regulations 3.3 and 4.3 are "null, void, and of no force and effect." We conclude that the remedies imposed by the superior court were improper.

Subject to some exceptions, OCGA § 16-3-21 (a) provides the statutory right to self-defense: "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is

---

[15] (Citations and punctuation omitted.) *Houston*, 282 Ga. App. at 414 (1).

necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]" The statute further provides: "Any rule, regulation, or policy of any agency of the state or any ordinance, resolution, rule, regulation, or policy of any county, municipality, or other political subdivision of the state which is in conflict with this Code section shall be null, void, and of no force and effect."

We have located three cases that consider OCGA § 16-3-21 (c). Most recently, *Olsen v. State* involved a police officer shooting and killing "an unarmed man in the midst of a mental health crisis."[16] At the officer's criminal trial, the officer asserted that he acted in self-defense.[17] The State introduced evidence of the county's use-of-force policy, which conflicted with the self-defense provisions of OCGA § 16-3-21.[18] For example, the policy stated that: "Officers must exhaust every means available of non-lethal force, prior to utilizing deadly force;" "Any threat used to justify the use of deadly force must be immediate and there must be no other possible remedy;" and "Many crimes that could be technically classified as 'forcible felonies' would not be

---

[16] *Olsen v. State*, 371 Ga. App. 12 (899 SE2d 518) (2024).

[17] Id. at 13.

[18] Id. at 16 (1).

11

life threatening enough to justify the use of deadly force to prevent them."[19] This Court reversed the officer's aggravated assault conviction, holding that the trial court erred in admitting into evidence the county's use-of-force policy without redacting the provisions that conflicted with OCGA § 16-3-21.[20]

*Allen v. City of Atlanta* involved an employment disciplinary action against a police officer who fired his firearm into a vehicle.[21] The department charged the officer with violating a work rule: "A firearm shall not be discharged if the lives of innocent persons may be in danger."[22] We held that this "mandatory" language of the rule conflicted with the self-defense provisions of OCGA § 16-3-21.[23] We thus reversed the officer's suspension based on that rule.[24]

---

[19] (Punctuation omitted.) Id.

[20] See id. at 16-17 (1).

[21] 235 Ga. App. 516 (510 SE2d 64) (1998).

[22] Id.

[23] Id. at 517-518.

[24] Id. at 518.

By contrast, *Henry County Board of Education v. S. G.* involved the expulsion of a student from high school after a fight on school grounds.[25] The school alleged that the student violated the student handbook by "physically abusing others."[26] The student asserted that she acted in self-defense.[27] The Supreme Court of Georgia held that "the record does not reflect whether the Local [School] Board properly considered the self-defense evidence or, even if it did, whether it properly applied the law regarding self-defense."[28] The Court ordered a "remand to the Local Board for further findings and conclusions after applying the appropriate law to the evidence in accordance with this opinion."[29]

Here, *S. G.* is most akin to the facts of this case. The Hearing Panel, like the local board in *S. G.,* "did not consider self-defense to be a defense available to [Drake] and thus did not evaluate whether [Drake] had met the evidentiary burden of

---

[25] 301 Ga. 794 (804 SE2d 427) (2017).

[26] Id.

[27] Id. at 796.

[28] Id. at 799 (2).

[29] Id. at 803 (2).

establishing this defense."[30] Indeed, the Hearing Panel explicitly rejected self-defense as a viable defense: "[S]elf-defense was insufficient for Mr. Drake's actions towards Ms. Bargouti since the Code of Conduct does not include verbiage related to self[-]defense." Nor did the Panel, with respect to Drake at least, resolve the factual issues associated with the self-defense claim, such as whether Bargouti had threatened Drake or whether she took his glasses. Moreover, the appeal to the Vice President did not cure this deficiency, as the Vice President only considered self-defense to be a possible mitigating factor, rather than a complete defense.

Drake contends that we should follow our holding in *Allen* and affirm the superior court's decision to void portions of UGA's code of conduct that arguably conflict with OCGA § 16-3-21. But the police-shooting decisions in *Allen* and *Olsen* involved very particular rules regarding use of force, rather than the general rules of student conduct present in this case and in *S. G.* The Supreme Court in *S. G.* did not determine that the rule against "physically abusing others" was void, and we similarly decline to declare void UGA's rules against physical violence.

---

[30] *S. G.*, 301 Ga. at 802 (2).

Accordingly, while we agree with the superior court's conclusion that the Hearing Panel did not properly consider Drake's self-defense claims, the superior court erred in voiding provisions of UGA's Code of Conduct. We thus vacate the court's order and remand with direction "to remand to the [Hearing Panel] for further findings and conclusions after applying the appropriate law to the evidence in accordance with this opinion."[31]

*Judgment vacated and case remanded with direction. Doyle, P. J., and Hodges, J., concur.*

---

[31] *S. G.*, 301 Ga. at 803 (2).