■ J. N. FUTIA CO., INC., Appellant, v. NATIONAL SURETY CORPORATION, Respondent.— GIBSON, P. J. Appeal by plaintiff (1) from an order of the Supreme Court at Special Term which granted defendant's motion for summary judgment dismissing the complaint and (2) from the judgment entered thereon. Plaintiff, an electrical contractor, sues upon a "Special Floater Policy" issued to it by defendant, under which plaintiff seeks to recover its loss arising because of damage to electric service connections installed by it in a pre-existing conduit system, at a State hospital, pursuant to its contract with a State agency. Tests conducted in April, 1965 disclosed that cable installed pursuant to the contract failed to meet the contract testing specifications. The State Department of Public Works directed plaintiff to remove and replace the defective cable and this plaintiff did; and, during the period July 21 to July 24, 1965, after uncovering a section of the pre-existing system, discovered, according to its contention, that defects in the conduit system had caused damage to the cable, resulting in its failure to meet the tests applied in April. Plaintiff proceeded with the work and completed the installation

on August 16, 1965. It asserts that it incurred costs of $31,844 in replacing the defective cable, against which the Department of Public Works on September 27, 1965 authorized payment of $10,844 in partial reimbursement; the department taking the position, apparently, that all of the damage was not due to its defective conduit but was in part caused by plaintiff's rough handling of the cable when drawing it through the conduit. The work was accepted by the State and certificate of completion issued on January 7, 1966. This action was commenced on January 3, 1967. The policy in suit covered "materials and supplies usual including cost of labor to (a heating, plumbing, air-conditioning, ventilating or electrical) contractor, including equipment, appurtenances and temporary structures the property of the assured, or the property of others for which the assured is liable to be installed by the assured in the premises of others anywhere in the Continental United States." Concededly, the electric conduits and cable installed by plaintiff pursuant to its State contract were so covered. The policy insured "against all risk of direct physical loss of or damage to the property covered from any external cause except as provided elsewhere in this policy." The policy contained, also, the following limitation: "20. Suit. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Assured of the occurrence which gives rise to the claim." Special Term, in a memorandum, concluded "that the plaintiff discovered the occurrence giving rise to this claim no later than July 24, 1965", more than 12 months prior to the commencement of the action on January 3, 1967; and on that ground Special Term dismissed the complaint. We believe that Special Term was correct in so holding and in thus rejecting plaintiff's contention that the insurance contract was one of suretyship, whereby, in plaintiff's view, defendant's liability did not accrue until January 7, 1966, when the State, the party primarily liable to plaintiff, declined to make full payment. Thus, plaintiff argues that the 12 months' policy limitation was tolled until January 7, 1966, because plaintiff could not until that time make claim against the State for the balance of its costs; and that the "occurrence which [gave] rise to the claim", within the intendment of paragraph 20 of the policy, was the fact of the final accrual or ascertainment of plaintiff's monetary damage on January 7, 1966. It seems too clear to require extended discussion that the insurance contract in suit is one of indemnity and that the "peril" insured against, being the "*physical loss of or damage to the property* * * * from any *external cause*" (emphasis supplied) was just that; it became a debt immediately due from the insurer directly and was not a contingent liability for the monetary damage recoverable, or not, in a suit against a third party allegedly causing the physical loss or damage. It seems equally clear that, within the meaning of the subsequent paragraph 20, embodying the contractual limitation, the "occurrence which gives rise to the claim" is the event or fact of infliction of physical damage to the *property* and not the ascertainment of the quantum of monetary damage sustained by the *owner*. Under paragraph 20, also, the "discovery * * * of the occurrence" is the ascertainment of the fact or happening of present physical damage from external cause and not the ultimate ascertainment of the amount of the net cost of replacement, for, certainly, the causative *occurrence* cannot be equated to the subsequent *calculation* of the loss. In *Rosenthal* v. *Reliance Ins. Co.* (25 A D 2d 860, affd. 19 N Y 2d 712) and in *Fotochrome, Inc.* v. *American Ins. Co.* (26 A D 2d 634, mot. to dsm. app. [for lack of prosecution] den. 20 N Y 2d 794), the policy term "occurrence", although not directly in issue, was implicitly

given the effect and meaning we attribute to it; and the same connotation has been given the phrase "inception of the loss" by the Court of Appeals (*Proc* v. *Home Ins. Co.,* 17 N Y 2d 239) and by this court (*Dubins* v. *Boston Ins. Co.,* 26 A D 2d 863, mot. for lv. to app. den. 19 N Y 2d 577). Order and judgment affirmed, with costs. Gibson, P. J., Reynolds, Aulisi, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Gibson, P. J.