### A09A1432. THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON v. DTI LOGISTICS, INC.

(686 SE2d 333)

ADAMS, Judge.

The entire cargo of three trailers was stolen while the trailers were parked in a Ryder Truck facility parking lot. DTI Logistics, Inc., the company transporting the cargo, had cargo insurance provided by Those Certain Underwriters at Lloyd's, London Subscribing to Policy No. C6120102 (the "Underwriters"). The policy covers loss of cargo owned by third parties, and DTI requested reimbursement under the policy. The Underwriters denied coverage. DTI brought suit for breach of contract, and the case went to trial with DTI prevailing. On appeal, the Underwriters contend the trial court erred by denying their motion for directed verdict, by improperly instructing the jury regarding a term of the policy, and by awarding prejudgment interest.

Construed in favor of the verdict, the evidence shows that DTI is a small trucking company that leases many of its trucks from Ryder. As a consequence of the relationship, Ryder gave DTI permission to park trailers at a Ryder facility in Atlanta. In the matter at hand, Colgate-Palmolive hired DTI to ship cargo valued at over $100,000, which required three trailers. Between May 9 and May 11, 2003, DTI parked the three loaded trailers at the Atlanta Ryder facility. The trailers were detached from the tractors, closed, and securely locked with keys removed. Nevertheless, at some point, the trailers were taken from the Ryder facility by an unknown person and returned empty.

In order to protect itself, DTI had purchased motor truck cargo coverage from the Underwriters and paid the premiums. The insuring clause of the policy provides that the Underwriters agree "to

---

or even to address both components if the defendant has made an insufficient showing on one).

indemnify the Insured":

> for ALL RISKS OF PHYSICAL LOSS OR DAMAGE FROM AN EXTERNAL CAUSE to lawful cargo in and/or on a truck whilst in the Insured's care, custody or control in the ordinary course of transit, including loading and unloading. . . .

The policy only covers cargo owned by third parties: the policy specifically excludes property of the insured; and "cargo" is defined not to include property or equipment owned, hired or leased by the insured. Colgate-Palmolive is not a party to this action.

Exclusion k of the policy excludes coverage for

> [a]ny losses from unattended[1] trucks while in the ordinary course of transit unless:
> a) The truck is garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or the truck is under constant surveillance, or on a guarded lot AND
> b) The truck has all the openings closed and securely locked and keys removed, in so far as the local regulations permit.

The term "truck" is defined to include "trailers and semi-trailers." And even an unattended trailer temporarily detached from a truck or tractor is covered if parked and secured in the same manner set out above. But the policy does not define a "guarded lot."

Prior to trial, the court granted partial summary judgment in favor of the Underwriters, finding undisputed that the trailers were not in a building, parked in a fully enclosed yard, or under constant surveillance. The court submitted to the jury the question of whether the trailers were on a "guarded lot," as well as the question of the amount of damages DTI was entitled to recover. After the close of evidence, the court determined that the damages were liquidated at an amount of $101,718.07, after application of a deductible in the policy. The jury found that the trailers were located on a "guarded lot," and the court entered judgment against the Underwriters for the liquidated amount plus prejudgment interest of $25,496.40.

1. The Underwriters first contend the trial court erred by denying their motion for directed verdict on the ground that DTI suffered no loss and proved no damages. "A directed verdict is

---

[1] The term "unattended" is defined to mean a truck without a responsible person within ten yards of the truck.

authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." (Footnote omitted.) *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28-29 (550 SE2d 450) (2001).

Although Colgate-Palmolive presented claims to DTI for the losses, the Underwriters proffered testimony to show that, as of the date of trial, DTI had not paid Colgate-Palmolive nor paid the intended purchasers for the loss. Consequently the Underwriters argue that DTI suffered no loss and that all periods of limitation have expired on possible claims against DTI by these parties. Therefore, the Underwriters contend, DTI has failed to prove damages, which is essential to a claim of breach of contract, and any recovery under the policy amounts to a windfall for DTI.

DTI responds that the policy was intended to cover cargo that DTI did not own and that the damages are determined by the terms of the contract. DTI presented evidence that it paid premiums to insure just such a loss, yet the Underwriters refused to pay without any basis to do so in the policy itself. Also, the policy gives the Underwriters the right to adjust with the cargo owner in the event of a loss but the Underwriters have not done so. Finally, DTI asserts that damages for breach of an insurance contract are to be measured at the time of the loss, which makes moot any argument about whether it has compensated any other party for the loss.

"The Carmack Amendment to the Interstate Commerce Act makes common carriers liable for actual loss of or damage to shipments in interstate commerce. 49 U.S.C. § 14706 (a) (1)." *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F3d 997, 1003 (11th Cir. 2003). See also *Great West Cas. Co. v. Flandrich*, 605 FSupp.2d 955, 964 (S.D. Ohio 2009). As a result of this liability, carriers have an insurable interest in the cargo because " 'insurable interest' means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4. See also *Conex Freight Systems v. Ga. Ins. Insolvency Pool*, 254 Ga. App. 92, 96-97 (1) (b) (561 SE2d 221) (2002) (person has an insurable interest in property if person "has such a right, title, or interest therein, or relation thereto, that he will be benefitted by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury"); *Altadis USA, Inc. v. NPR, Inc.*, 344 FSupp.2d 1349, 1356 (M.D. Fla. 2004) ("Courts have agreed that common carriers . . . can be held liable for shipments of goods, and therefore they have an insurable interest in the goods. Such an interest can be insured for the carrier's own benefit or for the benefit of the owner. See, e.g., Couch on Insurance, § 42:16."). Given an insurable interest, we need look no further than the policy itself to

determine whether the Underwriters were required to compensate DTI and in what amount. See generally *American Ins. Co. v. Bateman*, 125 Ga. App. 189, 193 (2) (186 SE2d 547) (1971); *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 409-410 (2) (434 SE2d 450) (1993).

"An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." (Punctuation omitted.) *Hunnicutt v. Southern Farm &c. Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987).

> In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.

(Footnote omitted.) *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008).

Here, the insuring clause of the policy provides that the Underwriters will "indemnify" DTI for "all risks of physical loss or damage from an external cause to lawful cargo." Black's defines "indemnify" as "to reimburse (another) for a loss suffered because of a third party's or one's own act or default," and it defines the related term "indemnity" as "[a] duty to make good any loss, damage, or liability incurred by another." Black's Law Dictionary 783-784 (8th ed. 2004). In the context of the policy language herein, the use of the term "indemnify" is broad enough to include any loss, not just liability to third parties. Moreover the peril being insured against is the risk of physical loss of the cargo even though it is owned by third parties. Thus the plain terms of the insuring clause provide that damage or loss of the cargo immediately gives rise to a claim under the policy. See *J. N. Futia Co., Inc. v. Nat. Surety Corp.*, 294 N.Y.S.2d 74 (App. Div. 1968) ("It seems too clear to require extended discussion that the insurance contract in suit is one of indemnity and that the 'peril' insured against, being the '*physical* loss of or *damage* to the *property* . . . from any *external cause*' . . . was just that; it became a debt immediately due from the insurer directly and was not a contingent liability.") (emphasis in original). The insuring clause could have been written to cover only the legal liability of the insured to third parties as a result of loss or damage to the cargo, but it was not.

Nothing in the rest of the policy is inconsistent with this construction nor warrants a different construction. Although the policy grants the Underwriters the privilege to adjust and settle with the cargo owner, that provision does not indicate that only claims

asserted against the insured are covered by the policy; and it provides that the insured's right to recover is only affected if the Underwriters pay the owner.[2] Other policy provisions give the Underwriters the opportunity to take action to protect their rights as well, but again, none affects DTI's right to recover under the policy where as here the Underwriters chose not to take any action.[3] Thus, the Underwriters' argument that DTI has not paid any claim for the value of the cargo and that any possible claims against DTI are barred by statutes of limitation, is not relevant.

The two primary cases cited by the Underwriters are distinguishable. They both involve the relative rights of multiple insureds under a single policy, as well as clauses stating that the multiple parties would be paid "as interests appear." See *Owens v. Ga. Underwriting Assn.*, 223 Ga. App. 29 (476 SE2d 810) (1996) (involving named insured and named insured mortgagee) and *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166 (430 SE2d 75) (1993) (involving named insured and two named loss payees).

2. The Underwriters contend the trial court erred by instructing the jury on the wrong definition of "guarded lot." They contend the court improperly omitted a critical part of the definition that would require "a degree of protection," or "protection from harm," and therefore the court allowed the jury to conclude that any effort to be observant was sufficient.

The trial court determined that the term "guard" was ambiguous. According to the court there were at least two possible meanings as the term was used in the policy: "one of which relates to watching over and one of which relates to standing guard or standing as if on guard." The court concluded from reading various definitions of the

---

[2] The policy provides:

In the event of loss or damage to property of others held by the Insured for which claim is made upon the Underwriters the right to adjust such loss or damage with the owner or owners of the property is reserved to the Underwriters and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Insured for which such payment has been made. If legal proceedings be taken to enforce a claim against the Insured as respects any such loss or damage, the Underwriters reserve the right at their option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured. . . .

[3] The policy provides that the Underwriters will be subrogated to DTI's rights:

In the event of any payment under this policy, the Underwriters shall be subrogated to all the Insured's rights of recovery against any person or organization. The Underwriters shall have the right to bring suit for such recovery, . . . in the name of the Insured for the amount of the Underwriters' payment or, at the option of the Underwriters bring an action in the name of the Insured to recover the entire loss. . . .

The policy also provides that the insured shall do nothing after loss to prejudice the Underwriters subrogation rights. And the policy provides that if there is other insurance that would apply, "the insurance under this policy shall apply only as excess insurance over such other insurance."

word "that it can be a reasonable interpretation of the word *guard* that a reasonable insured might apply if the guarding function was limited to entrances and exits." The court then charged the jury as follows:

> The particular issue is whether the trailers in question were on a guarded lot.
>
> Now, there are statutes and other laws concerning the construction of contracts and insurance contracts. And as I told you at the beginning of the case it's up to the Court to construe and instruct you on the law, and it will be for you, the jury, to determine whether the lot in which the trailers were stored is a guarded lot.
>
> Now, among the many definitions of the verb, guard, the ones[,] after applying the rules of construction and the laws of construction to this contract[,] that are relevant, guard means to watch over or supervise entry or exit.
>
> Lot means a piece of land having specific boundaries. The guarded lot condition is satisfied if the lot is watched over or entrance and exit is supervised.

We apply the "plain legal error" standard of review in evaluating an allegedly erroneous jury instruction. *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008). The party asserting error must establish that a legally erroneous charge was given and that it was harmful. *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 24 (1) (645 SE2d 536) (2007).

The most relevant definitions of the verb "guard" from several dictionaries are quoted below:

> a: the act or duty of protecting or defending b: the state of being protected[4]

> To keep watch against danger; to protect the person or property of another. To control or restrain.[5]

> 1. To protect from harm or danger, esp. by careful watching; keep secure: *guard a bank; guarding the President.* 2. To watch over to prevent escape, violence, or indiscretion: *guarded the prisoner.* 3. To keep watch at (a door, for example) to supervise entries and exits.[6]

---

[4] Merriam-Webster Online. 23 Sept. 2009 www.merriam-webster.com/dictionary/guard.

[5] Ballentine's Law Dictionary, 3rd ed.

[6] The American Heritage Dictionary, 2nd College ed., 1985.

1 to keep safe from harm; watch over and protect; defend; shield 2 to watch over; specif., a) to keep from escape or trouble b) to hold in check; control; restrain . . . d) to supervise entrances and exits through (a door, gate, etc.) . . . — vi. 1 to keep watch; take precautions (against). . . .[7]

As can be seen, two of the definitions include the concept of supervising entrances and exits, and three include the concept of keeping watch. But they also include the concepts of "protecting" and even "defending."

At trial, the court clearly indicated that it had resolved an ambiguity in the definition by following the rules of construction. One of those rules is that policy "exclusions will be strictly construed against the insurer and in favor of coverage." *York Ins. Co. v. Williams Seafood of Albany*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001). "Exclusions to an insurance policy require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." (Citations and punctuation omitted.) *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (1) (601 SE2d 363) (2004). Accordingly, the court was authorized to construe the term "guarded lot" as found in the policy against the insurer. The choice made by the court is supported by the various definitions of the term and, therefore, was not plain error.

3. The Underwriters contend they were entitled to a directed verdict because the undisputed evidence shows the trailers were not parked on a "guarded lot." But the evidence on this point was conflicting and therefore the issue was properly submitted to the jury.

DTI pointed to evidence that the parking lot was monitored by Ryder employees who were instructed to keep a lookout on the property; that there was a single entrance/exit to the property near where employees worked; that the employees were present twenty-four hours a day, seven days a week; that the property was enclosed by a chain link fence, most of which was topped with barbed wire; and that the employees frequently stopped suspicious people and expelled intruders. The Underwriters pointed to evidence that the Ryder facility had two lots; that the employees mostly monitored the lower lot; that the trailers were parked in the upper lot that could not be seen from the lot below; that the fence to the upper lot had a large hole in it and had been pushed down in another place; that

---

[7] Webster's New World Dictionary, 3rd College ed., 1988.

Ryder did not employ any security personnel; that no one was assigned as a lookout on the days in question; and that the installed security cameras were not working at the time of the theft. We find that an issue of fact was raised as to whether the lots were guarded, as defined in the charge to the jury. Compare *Hot Foot Xpress v. Century Surety Co.*, 2008 U. S. Dist. LEXIS 66722 (not a guarded lot where lot is unattended, signs say "park at your own risk," and lot is not fenced, enclosed, locked, guarded, monitored, or under surveillance); *Venator Group v. Voyager Express*, 2003 U. S. Dist. LEXIS 4618 ("guarded" in the phrase "in a fenced, lighted and guarded lot" required the presence of a human being).

4. Finally, the Underwriters contend the damages were not liquidated and therefore the trial court erred by awarding prejudgment interest. The only basis for their argument is DTI sought a different amount in its complaint than it proved at trial and the Underwriters disputed the amount of damages in their answer. The Underwriters do not point to any of the evidence introduced at trial to support their contention.

Demands are liquidated where "the sum to be paid is fixed or certain." OCGA § 7-4-15. A claim is not liquidated when there is a bona fide dispute as to the amount owed. *Intl. Indem. Co. v. Terrell*, 178 Ga. App. 570 (2) (344 SE2d 239) (1986).

On valuation, the policy provides:

> The valuation of all goods and merchandise covered by this part shall not exceed the invoice value of that merchandise at the point of shipment on the date of loss, or if there is no invoice, then the valuation shall not exceed the actual cash value of the merchandise.

DTI presented the invoice price of the stolen cargo at trial and it is undisputed that the total cargo was lost. The only evidence introduced at trial showed that the total amount of the invoices was $116,718.07 and that there was a $5,000 deductible per trailer under the policy. And the Underwriters do not contest the amount of the invoices nor the total. Nor did they present evidence of an alternate calculation of the amount.

The trial court concluded the claim was liquidated because there was no bona fide controversy over the amount. We find no error. Where the sum to be paid is fixed or certain based on the agreement of the parties or operation of law, the debt is still considered liquidated "[e]ven though the ultimate amount awarded is less than that requested, or the amount is offset by a counterclaim amount." *Hampshire Homes v. Espinosa Constr. Svcs.*, 288 Ga. App. 718, 723 (2) (b) (655 SE2d 316) (2007). Here, the Underwriters have not

raised a bona fide dispute as to the amount owed.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 2, 2009.

*Fields, Howell, Athans & McLaughlin, Gregory L. Mast,* for appellant.

*Strawinski & Stout, James S. Strawinski, Briant G. Mildenall,* for appellee.