**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

November 30, 2012

# In the Court of Appeals of Georgia

A12A1125, A12A1126. LLOYD'S SYNDICATE NO. 5820 d/b/a CASSIDY DAVIS v. AGCO CORPORATION; and vice versa.

A12A1281. GLYNN GENERAL PURCHASING GROUP, INC. et al. v. AGCO CORPORATION.

PHIPPS, Presiding Judge.

AGCO Corporation manufactured and sold agricultural equipment, offering extended protection plans to its customers. Warranty Specialists, Inc. d/b/a Glynn General Corporation sold the extended protection plans to AGCO and administered the plans. Glynn General Purchasing Group, Inc. ("GGPG") obtained a master policy of liability insurance for AGCO from Lloyd's Syndicate No. 5820 d/b/a Cassidy Davis to provide coverage to AGCO for its liability to AGCO's customers pursuant to the extended protection plans. When Warranty Specialists later suspended payment of warranty claims filed in connection with failed wheel motors on equipment

enrolled in the extended protection plans, AGCO sued. The trial court granted AGCO's motion for partial summary judgment and denied Cassidy Davis's motion for summary judgment on the issue of whether the extended protection plans and the master insurance policy covered or excluded coverage for equipment failures resulting from a design or engineering defect. The court denied Cassidy Davis's motion for summary judgment on AGCO's claims for bad faith refusal to pay. It also denied AGCO's summary judgment motion based on estoppel and the inapplicability of an exclusion clause in the master insurance policy, and denied summary judgment to Warranty Specialists and GGPG on various claims, including those for breach of contract, fraud and attorney fees. For the reasons that follow, we affirm the judgments.

AGCO manufactured and sold an agricultural spray applicator known as the RoGator. The RoGator was powered by four wheel motors; the failure of one wheel motor caused the entire machine to stop functioning.

Beginning in 2005, AGCO offered extended protection plans ("EPPs") to its customers who purchased RoGators. AGCO purchased the EPPs from Warranty Specialists, paying the latter premiums for each RoGator enrolled in an EPP. Warranty Specialists administered the EPP. Under the EPP, AGCO agreed to repair

2

or replace covered parts of the RoGator, "if required due to a MECHANICAL BREAKDOWN or FAILURE that is the result of a true defect in material or workmanship."

The EPP pertinently provided: "This service contract coverage is limited exclusively to the repair or replacement of covered parts . . . determined to have failed due to a MECHANICAL BREAKDOWN or FAILURE as defined under terms and definitions." The EPP defined a covered "mechanical breakdown or failure" as "the actual breaking or electronic failure of any covered part of the covered MACHINE while in ordinary use arising from faults attributable to manufacturing defects in workmanship or materials in such MACHINE causing sudden stoppage of the functions thereof and necessitating repair before it can resume work."

GGPG obtained a master policy of liability insurance for AGCO from Cassidy Davis, which provided coverage to AGCO for any liability AGCO had to its customers for machines enrolled in the EPP.

Pursuant to the EPP and the master policy, the purchaser of a machine that had a mechanical breakdown or failure presented the machine to one of AGCO's dealers, who made the initial determination of coverage; if the repair was covered, the dealer repaired the machine. The dealer then submitted a claim for reimbursement for the

3

repair cost to Warranty Specialists, who would evaluate and pay or deny claims under the EPP. Warranty Specialists paid premiums to Cassidy Davis, and Cassidy Davis paid Warranty Specialists for claims deemed valid.

In mid- to late 2008, after having accepted and paid approximately 25 wheel motor claims, Warranty Specialists stopped processing the claims. In September 2008, it informed AGCO that it was placing all wheel motor claims on hold until it received support from AGCO (such as assistance in paying the claims or higher premiums).

Also in September 2008, Warranty Specialists sent an email message to AGCO stating that no further wheel motor claims would be paid because, pursuant to the master policy, Cassidy Davis had invoked the Epidemic Failure Clause in relation to RoGator wheel motors. "With immediate effect, no further claims should be paid in respect of any [AGCO] attachments . . .; for the avoidance of doubt this includes any

claims pending or subsequently advised."[1] When Warranty Specialists failed to pay the dealers' wheel motor claims, AGCO paid the claims.

AGCO sued Warranty Specialists, Cassidy Davis, and GGPG, seeking declaratory relief regarding coverage under the master policy and reimbursement for payment of the warranty claims; asserting claims for breach of contract and bad faith against Cassidy Davis; asserting claims for breach of contract and fraud against Warranty Specialists and GGPG; and asserting claims for money had and received against Warranty Specialists, Cassidy Davis, and GGPG. Cassidy Davis appeals in Case No. A12A1125; AGCO appeals in Case No. A12A1126; and Warranty

---

[1] The Epidemic Failure Clause ["EFC"] purportedly contained in the master policy provided:

> In the event that the total number of claims from a common cause for a particular component or components, . . . amounts to more than 10% of the earned units, this shall be considered an "Epidemic Failure", and will be the sole responsibility of [AGCO]. Accordingly, [AGCO] will be liable for all claims arising from an Epidemic Failure and all claims relating to, or arising from, a component which, by virtue of this clause, is the subject, or cause, of an Epidemic Failure.

Specialists and GGPG appeal in Case No. A12A1281. This court reviews the grant or denial of summary judgment de novo.[2]

*Case No. A12A1125*

1. Cassidy Davis contends that the trial court erred by granting AGCO's motion for partial summary judgment and by denying its motion for summary judgment on the issue of whether there was coverage for breakdowns attributable to design defects. According to Cassidy Davis, the EPP and master policy did not afford coverage for failures resulting from a design or engineering defect, and the RoGator's wheel motor failures resulted from such a defect.[3]

The trial court ruled that the language of the EPP and master policy was unambiguous and "[did] not exclude or limit coverage for a design or engineering defect"; and that, as used in these contracts, the "the term 'manufacturing defects' [did] not exclude coverage for breakdowns or failures attributable to, or caused by, a design defect." The court granted AGCO's motion for partial summary judgment "on the issue of whether the EPP and the master policy provide coverage for a

---

[2] *ChoicePoint Srvcs. v. Hiers*, 284 Ga. App. 640 (644 SE2d 456) (2007).

[3] AGCO does not concede that the failures resulted from a design or engineering defect; it contends that the issue is not determinative because design or engineering defects were covered and not excluded.

6

mechanical breakdown or failure that is allegedly attributable to, or caused by, a design or engineering defect."

An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract.[4] The whole contract should be looked to in arriving at the construction of any part.[5]

As set out above, the EPP covered the actual breaking or electronic failure of any covered part "while in ordinary use arising from faults attributable to manufacturing defects in workmanship or materials." Where a contract requires that conduct "arise out of" an act, "it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship."[6] "Indeed, nothing more than a slight causal connection is required to show that a loss arose out of a specified act set forth in a contract."[7] The phrase "arising from faults attributable to manufacturing defects in workmanship or materials" is broad enough

---

[4] See *Certain Underwriters at Lloyds, London v. DTI Logistics*, 300 Ga. App. 715, 718 (1) (686 SE2d 333) (2009).

[5] OCGA § 13-2-2 (4).

[6] *Lawyers Title Ins. v. New Freedom Mortg.*, 285 Ga. App. 22, 30 (645 SE2d 536) (2007) (punctuation omitted).

[7] Id.

to include a breakdown or failure related to a manufacturing defect, even where there was a design or engineering defect. Notably, Warranty Specialists initially paid dozens of wheel motor claims, indicating that it found upon initial review that the wheel motor claims were covered under the EPP. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them."[8]

Coverage is construed broadly and it is the insurer's duty to clearly set forth exclusions to coverage.[9] The EPP specifically set forth its exclusions in a section entitled "WHAT IS NOT COVERED." It contained no exclusion for mechanical breakdowns or failures resulting from design or engineering defects.

Thus, coverage for the failures at issue were covered and not excluded under the EPP and master policy. Inasmuch as AGCO was entitled to judgment as a matter

---

[8] *Eickhoff v. Eickhoff*, 263 Ga. 498, 504-505 (435 SE2d 914) (1993) (citations and punctuation omitted), overruled on other grounds in *Lee v. Green Land Co.*, 272 Ga. 107 (527 SE2d 204) (2000); see *Purcell v. Allstate Ins. Co.*, 168 Ga. App. 863, 866 (310 SE2d 530) (1983).

[9] *DTI Logistics*, supra at 721 (2) (the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms).

of law on this particular issue, and Cassidy Davis was not, the trial court did not err in so ruling.

2. Cassidy Davis contends that the trial court erred in denying its motion for summary judgment on AGCO's claim that it acted in bad faith in denying the warranty claims, because Cassidy Davis had a reasonable basis to deny coverage; further, it argues, AGCO's demand was not made at a time when it had a right to demand payment.

(a) The question of whether an insurer denied benefits in bad faith is for the trier of fact.[10] Thus, assuming that the procedural requirements of the Code section were met, the question of whether an insurer has acted in bad faith in denying a claim under OCGA § 33-4-6[11] must be submitted to a jury unless the insurer can prove as a matter of law that it possessed a reasonable defense to coverage.[12] The insurer's

---

[10] See *Certain Underwriters at Lloyds of London v. Rucker Constr. Co.*, 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007); *First Fin. Ins. Co. v. American Sandblasting*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996).

[11] OCGA § 33-4-6 pertains to an insurer's liability for damages and attorney fees when the insurer has refused, in bad faith, to pay for a covered loss.

[12] *Rucker Constr. Co.*, supra; see also *Ga. Farm Bureau Mut. Ins. Co. v. Murphy*, 201 Ga. App. 676, 679 (1) (411 SE2d 791) (1991).

defense to the coverage must be reasonable under the circumstances presented in the case.[13]

There was evidence that, in explaining its basis for denying the claims, Cassidy Davis cited "a clear historical reliability problem on wheel motors," not a contractual provision. And it cited the EFC; AGCO pointed to evidence that the EFC was not part of the EPP or the master policy, that it had been given no notice of the EFC before the clause was invoked, that Cassidy Davis and Warranty Specialists knew of previous wheel motor issues before entering into the contracts, and that the claims were being denied because they had become too costly. We cannot conclude that Cassidy Davis's refusal to pay was reasonable as a matter of law, and that it was entitled to summary judgment.[14]

(b) AGCO's demand for payment pursuant to OCGA § 33-4-6 was valid. On April 15, 2009, AGCO delivered a letter to Cassidy Davis demanding reimbursement

---

[13] *Murphy*, supra at 677 (1); see also *Rucker Constr. Co.*, supra at 850.

[14] See generally *Murphy*, supra at 679 (1) (failure of insurer to investigate an alleged loss, and a denial of any liability upon the ground that the loss was not recoverable under the policy, but arose from some cause not covered by the policy, may be evidence of bad faith).

for payments AGCO had made on the warranty claims; AGCO stated therein that it had paid $410,000 in wheel motor claims.

Cassidy Davis contends that the bad faith claim was not viable when made because payment was not yet due. It cites the master policy provision that Cassidy Davis "agrees to indemnify [AGCO] for all sums which [AGCO] shall be held legally liable to pay in respect of their contractual liability." Cassidy Davis asserts that because no judgment had been rendered against AGCO at the time of the demand, AGCO had not been held liable to pay any sums.

As explained in *DTI Logistics*,[15] "indemnify" has been defined as "to reimburse another for a loss suffered because of a third party's or one's own act or default"; and "indemnity" has been defined as "a duty to make good any loss, damage or liability incurred by another."[16]

There was no requirement in the EPP or the master policy that a judgment had to be rendered against AGCO before it could demand payment from Cassidy Davis and before Cassidy Davis was obligated to reimburse AGCO. In the context of the contracts in this case, the use of the term "indemnify" is broad enough to include any

---

[15] Supra.

[16] Id.

11

liability, not just liability resulting from a judgment.[17] AGCO was liable under the terms of the EPP to pay for warranty claims when customers filed claims in accordance with the EPP. Cassidy Davis was not entitled to summary judgment on the bad faith claim.[18]

*Case No. A12A1126*

3. In its cross-appeal, AGCO contends that the trial court erred by denying its motion for summary judgment on the basis that Warranty Specialists, Cassidy Davis, and GGPG were estopped to assert other grounds to deny coverage (namely, that the EPP did not cover design or engineering defects) because they had initially denied the claims based on the EFC. AGCO asserts that estoppel applies because AGCO relied to its detriment on the reason initially given.

Estoppels are not generally favored by the law.[19] Further, the coverage of a policy cannot be extended by estoppel; the doctrine of estoppel based on the conduct or action of the insurer or its agent is not available to bring within the coverage of a

---

[17] Id.

[18] See *DTI Logistics*, supra at 718 (1) (coverage for loss of cargo was triggered when loss occurred); see also *Owners Ins. Co. v. Smith Mechanical Contractors*, 285 Ga. 807, 810 (683 SE2d 599) (2009).

[19] *White v. White*, 274 Ga. 884, 885 (1) (561 SE2d 801) (2002).

policy risks not covered by its terms, or risks not expressly excluded therefrom.[20] Moreover, estoppel is a question for the jury unless it can be unequivocally established.[21] When the warranty claims were initially denied, the appellees took no position regarding the EPP and whether it also provided a basis for denying the claims. AGCO has not shown detrimental reliance on the appellees' initial assertion that the EFC barred the claims.[22] Thus, AGCO has not shown that Warranty Specialists, Cassidy Davis, and GGPG are estopped from asserting a different ground than that initially stated.[23]

4. AGCO also contends that the trial court erred in denying its motion for summary judgment because the EFC was not a valid exclusion to the master policy. AGCO asserts that it had no knowledge of the master policy because the appellees

---

[20] *Lumber Transport v. Int. Indemnity Co.*, 203 Ga. App. 588, 590 (2) (c) (417 SE2d 365) (1992).

[21] *Smithloff v. Benson*, 173 Ga. App. 870, 874 (3) (328 SE2d 759) (1985).

[22] See generally *Ga. Farm Bureau Mut. Ins. v. Vanhuss*, 243 Ga. App. 26, 27 (532 SE2d 135) (2000) (estoppel requires detrimental change in position in reliance on conduct of party to be estopped).

[23] See generally *Danforth v. Government Employees Ins. Co.*, 282 Ga. App. 421, 428 (4) (c) (638 SE2d 852) (2006).

had failed to deliver it to AGCO, in violation of OCGA § 33-24-14 (a).[24] "When an insurance company fails to mail or deliver the insurance policy to the insured within a reasonable amount of time after its issuance, the insurance company may still rely on exclusions contained in the policy of which the insured otherwise had notice."[25]

GGPG was the master policy holder, and AGCO was an insured by virtue of its membership in GGPG. There was evidence that GGPG had notice of the EFC. Under the circumstances, the trial court did not err by concluding that the appellees are not precluded as a matter of law from relying on the EFC.

*Case No. A12A1281*

5. Warranty Specialists and GGPG contend that the trial court erred by granting AGCO's motion for partial summary judgment, expressly adopting the arguments stated in Cassidy Davis's brief in Case No. A12A1125. But as discussed in

---

[24] OCGA § 33-24-14 (a) (providing that every policy shall be mailed or delivered to the insured within a reasonable period of time after its issuance); see *Danforth*, supra at 426 (4) (b) (an insurer may not rely on an exclusion where it did not timely deliver a policy and where the insured had no knowledge of the exclusion); *Investor's National Life Ins. v. Norsworthy*, 160 Ga. App. 340 (287 SE2d 66) (1981).

[25] *Danforth*, supra (punctuation and footnote omitted).

14

Division1,[26] those arguments are without merit. The trial court did not err in granting AGCO's motion for partial summary judgment.

6. Warranty Specialists and GGPG assert several contentions to support their position that the trial court erred by denying their motion for summary judgment. The contentions are without merit.

(a) Warranty Specialists asserts that it was entitled to summary judgment on AGCO's breach of contract claim because it provided insurance and administered the EPP as agreed. But there was evidence that Warranty Specialists had stopped administering the claims, holding them indefinitely without paying or denying them, contrary to the terms of the EPP and master policy. The trial court did not err in denying summary judgment to Warranty Specialists.[27]

(b) Warranty Specialists contends that it was entitled to summary judgment on AGCO's fraud claim because the claim was based on allegations that Warranty Specialists had misrepresented to AGCO that design defect claims would be covered, but there was no evidence that it had made the representations, that they were false,

---

[26] Supra.

[27] See generally *Threatt v. Rogers*, 269 Ga. App. 402, 407 (3) (604 SE2d 269) (2004) (court did not err by denying motion for summary judgment where issues of fact remained regarding whether party had breached sales contract).

and that AGCO reasonably relied on said representations. "[S]light circumstances may be sufficient to carry conviction of [fraud's] existence."[28] AGCO pointed to some evidence of fraud (e.g., regarding a Warranty Specialists's agent's prior knowledge of problems with the equipment and failure to disclose or provide to AGCO the EFC) to create an issue of fact.[29]

(c) Warranty Specialists asserts that it was entitled to summary judgment on AGCO's claim that it was entitled to receive "cover" damages because AGCO had to purchase replacement EPPs from another provider after Warranty Specialists ceased enrolling AGCO's equipment in its EPP in 2008.[30] Warranty Specialists states that it had not agreed to enroll AGCO's products through the end of 2008 (or for any specific period). But there was evidence that the parties had anticipated enrolling RoGators in the EPP plan beyond August 15, 2008, and evidence that the master

---

[28] *Stinson v. Artistic Pools, Inc.*, 236 Ga. App. 768, 769 (2) (513 SE2d 510) (1999) (citations and punctuation omitted).

[29] See OCGA § 23-2-53 (suppression of a material fact which a party is under an obligation to communicate constitutes fraud).

[30] See OCGA § 11-2-712 (regarding a buyer's right to procure substitute goods and recover from the seller, as damages, the difference between the cost of cover and the contract price).

16

policy period would not end until November 30, 2008. Warranty Specialists was not entitled to judgment as a matter of law on the claim for cover damages.

(d) Warranty Specialists contends that it was entitled to summary judgment on AGCO's claim for attorney fees under OCGA § 13-6-11 because AGCO cannot prevail on any of its claims, and because there was no evidence of bad faith or stubborn litigiousness. For the reasons discussed above, the former contention is without merit. The latter contention is also without merit.

OCGA § 13-6-11 permits the award of attorney fees to a plaintiff where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. Questions of bad faith, stubborn litigiousness and unnecessary trouble and expense are generally for the jury to decide.[31] "Even slight evidence of bad faith can be enough to create an issue for the jury."[32] There was evidence that Warranty Specialists acted in bad faith (for instance, its failure to communicate the existence of the EFC to AGCO and its failure to

---

[31] *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579, 581 (2) (394 SE2d 367) (1990).

[32] *Morrison Homes of Florida v. Wade*, 266 Ga. App. 598, 600 (2) (598 SE2d 358) (2004).

17

process pending claims). Thus, Warranty Specialists was not entitled to summary judgment on the claim for attorney fees.

(e) GGPG contends that it was entitled to summary judgment on all of AGCO's claims against it, because there was no evidence that it had engaged in any of the conduct for which AGCO seeks damages. It asserts that it was merely the holder of the master policy issued by Cassidy Davis, under which AGCO obtained its insurance, and that it existed solely as a vehicle through which insurance could be purchased; further, it argues that AGCO's evidence was insufficient to raise a fact question regarding GGPG's liability as an alter ego of Warranty Specialists. But AGCO alleged that GGPG was liable because it had failed to procure the proper insurance coverage for its equipment.

Moreover,

> it cannot be held as a matter of law that evidence insufficient to pierce the corporate veil automatically serves to negate the existence of an agency relationship between the corporations. . . . [E]ven where a parent and wholly-owned subsidiary have remained separate corporate entities so that the acts of one are not chargeable to the other under the alter ego

doctrine, both corporations may nonetheless be subject to liability where one corporation acted as the agent for the other.[33]

There was evidence that GGPG was "so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of [Warranty Specialists]."[34] In addition to evidence that it purchased the insurance, there was evidence that Warranty Specialists and GGPG "are one and the same," and that they were commonly owned. A fact question existed, and GGPG was not entitled to summary judgment.[35]

*Judgments affirmed in Case Nos. A12A1125, A12A1126, and A12A1281. Ellington, C. J., and Dillard, J., concur.*

---

[33] *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997) (citations and punctuation omitted).

[34] See id. (citations and punctuation omitted).

[35] Id.